IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

OREGON NATURAL DESERT
ASSOCIATION, et al.,

           Plaintiffs,      Civil No. 04-3096-CO

     v.                        ORDER

UNITED STATES FOREST
SERVICE, et al.,

           Defendants.

COONEY, Magistrate Judge:

    Plaintiffs bring this action alleging that defendants are violating the National Forest Management Act (NFMA), 16 U.S.C. §§ 1600-1614 <u>et seq.</u>, the Endangered Species Act (ESA), 16 U.S.C. §§ 1531 <u>et seq.</u>, Forest Service regulation 36 C.F.R. § 222, the Administrative Procedure Act (APA), 5 U.S.C. §701-706, <u>et seq.</u>, and the National Environmental Policy Act (NEPA), 42 U.S.C. §4321 <u>et seq.</u>, in connection with ongoing and annually authorized livestock grazing within the Fremont-Winema National Forests. Plaintiffs seek declaratory and injunctive relief, as

well as attorney fees, expenses, and costs.

Defendants move to dismiss plaintiffs' first, second, third, fourth, fifth, sixth, and eighth claims based on lack of subject matter jurisdiction, and/or because they are moot, and/or because they are barred by the statute of limitations, and/or because Congress has foreclosed the Court from compelling agency action (#39).

## I.  **FACTS**

The following paragraphs paraphrase relevant portions of plaintiffs' complaint allegations:

Plaintiffs allege that:

Defendants United States Forest Service and Karen Shimamoto, Supervisor of the Fremont-Winema National Forests, (collectively referred to as Forest Service) are violating the NFMA, the ESA, NEPA, the APA, and Forest Service regulation 36 C.F.R. § 222 by failing to insure that ongoing and annually authorized livestock grazing within the Fremont-Winema National Forests is consistent with the Fremont-Winema National Forests' Land Resource Management Plans (LRMPs) as amended by the Inland Native Fish Strategy (INFISH) and by failing to undertake legally required consultation, monitoring, and analyses for the protection of fish, wildlife, and other natural values prior to authorizing grazing.  (Amended Complaint ¶1).

The Forest Service has violated and continues to violate the ESA by authorizing grazing in excess of grazing standards

that are incorporated as terms and conditions of biological opinions governing the grazing programs of the Fremont-Winema National Forests. (Id. at ¶2). These standards are designed to avoid the "take of or jeopardy to listed fish species". (Id.). The "Forest Service has not completed reinitiated consultation with the Fish & Wildlife Service or monitoring as required by the terms and conditions of the governing biological opinions." (Id.).

The Forest Service has violated the NFMA by authorizing continued grazing on eleven grazing allotments in systematic and chronic violation of INFISH standards and guidelines. (Id. at ¶3). The Forest Service has not complied with INFISH monitoring requirements and grazing standards. (Id.).

In their first claim for relief, plaintiffs allege that:

The Forest Service violated the NFMA by failing to comply with the Inland Native Fish Strategy (INFISH) standards and other LRMP standards for grazing within the Fremont-Winema National Forests when it authorized grazing on eleven allotments via federal term grazing permits, allotment management plans (AMPs), annual operating plans (AOPs), and annual operating instructions (AOIs), including the 2000, 2001, 2002, 2003, 2004, and 2005 AOPs/AOIs that are part of the federally issued grazing permits. (Plaintiffs' Amended Complaint ¶ 86). The Forest Service has not complied with its non-discretionary duty to adequately modify or eliminate grazing when those practices

retard the attainment of Riparian Management Objectives.  Id.
The Forest Service's management of the grazing program through
AMPs and term grazing permits, and its annual grazing
authorizations or implementation of those permits via AOPs and
AOIs, that fail to comply with these LRMP standards violates the
NFMA consistency requirement.  Id.

In their second claim for relief, plaintiffs allege that:

The Forest Service has a pattern, practice, or policy of
violating the NFMA by failing to comply with INFISH and the LRMP
standards for grazing when it permits and authorizes grazing on
the eleven identified allotments.  (Id. at ¶89).  The Forest
Service's management of the grazing program through AMPs and
term grazing permits, and its annual authorizations or
implementations under those permits via AOPs and AOIs, that fail
to comply with the LRMP standards violates the NFMA's
consistency requirement.  (Id.).

In their third claim for relief, plaintiffs allege that:

The Forest Service violated the NFMA by allowing grazing in
the years 2000, 2001, 2002, 2003, 2004, and 2005 on the eleven
grazing allotments at issue without complying with the INFISH
monitoring requirements.  (Id. at ¶92).  The Forest Service is
allowing grazing to continue on these eleven allotments without
required and relevant monitoring data, rendering the Forest
Service's decisions inconsistent with the LRMP requirements in
violation of the NFMA.  (Id. at ¶94).

In their fourth claim for relief, plaintiffs allege that:

The Forest Service violated the NFMA by allowing grazing in the years 2000, 2001, 2002, 2003, 2004, and 2005 on the eleven grazing allotments at issue without complying with the INFISH monitoring requirements. (Id. at ¶96). The Forest Service has a pattern, practice, and policy of permitting grazing on these eleven allotments without the required and relevant monitoring data. (Id.). Each decision to permit and annually authorize grazing without the necessary and relevant information continues this pattern, practice, and policy which is inconsistent with INFISH requirements in violation of the NFMA. (Id.).

In their fifth claim for relief, plaintiffs allege that:

The Forest Service is failing to comply with Forest Service regulations that implement the NFMA and require the Forest Service to revise AMPs for all grazing allotments. (Id. at ¶98). The Forest Service is not preparing timely and updated environmental analyses that examine the allotment-specific impacts of the Fremont-Winema grazing program. (Id. at ¶99). Many of the grazing allotments in the Fremont-Winema National Forest have AMPs that are decades old and do not represent the current site-specific conditions. (Id.). These out-of-date AMPs do not account for or evaluate new information or changing circumstances, including new scientific research on the effects of grazing and the listing of fish species as threatened. (Id.).

The Forest Service is not in compliance with the schedule established pursuant to the 1995 Rescissions Act and is violating this act by failing to revise the AMPs. (Id. at ¶101). The Forest Service's failure to meet its duty to analyze the effects of the grazing program and revise the AMPs for the eleven allotments at issue in accordance with that analysis constitutes agency action unlawfully withheld or unreasonably delayed in violation of the APA. (Id. at ¶102). In the alternative, the Forest Service's decision to authorize continued grazing on these eleven allotments without updated AMPs is arbitrary, capricious, an abuse of discretion, and not in accordance with law in violation of the APA. (Id.).

In their sixth claim for relief plaintiffs allege that:

The Forest Service is violating the NEPA by failing to complete the required analysis for grazing allotments. (Id. at ¶105). The Forest Service is failing to reinitiate the NEPA process for livestock grazing permits, AOPs and AOIs, or other ongoing authorizations of grazing on the Fremont-Winema National Forests to address the impacts from livestock grazing on the listed sucker and bull trout species, even though these developments have created significant new circumstances requiring new or supplemental NEPA analysis. (Id.). The Forest Service's decision to permit or authorize continued grazing on the eleven allotments at issue without the required NEPA analysis is arbitrary, capricious, an abuse of discretion, and

not in accordance with law. (Id. at ¶106). In the alternative, the Forest Service's failure to conduct the required NEPA analysis constitutes agency action unlawfully withheld or unreasonably delayed. (Id.).

In their eighth claim for relief plaintiffs allege that:

The Fish and Wildlife Service's failure to include INFISH standards as reasonable and prudent measures in 1997 and 1998 biological opinions governing the Fremont-Winema grazing program to avoid jeopardy to listed fish species is arbitrary and capricious and a violation of the ESA. (Id. at ¶¶120-121).

## II. <u>STANDARD OF REVIEW</u>[1]

Federal courts require notice pleading. A pleading must contain a short and plain statement of the claim showing the party is entitled to relief. <u>Lynn v. Sheet Metal Workers'</u>

---

[1]The court finds that defendants' motion to dismiss for lack of subject matter jurisdiction brought pursuant to Rule 12(b)(1), should be address as a motion to dismiss for failure to state a claim under Rule 12(b)(6). <u>Cetacean Community v. Bush</u>, 386 F.3d 1169, 1175 (9th Cir. 2004)(claims regarding lack of statutory standing are properly addressed under Rule 12(b)(6)). When ruling on a Rule 12(b)(6) motion, the court will not consider matters outside the pleadings without converting the motion to a motion for summary judgment. <u>Olsen v. Idaho State Bd. of Medicine</u>, 363 F.3d 916, 921-922 (9th Cir.2004). In this case, the court will not consider matters outside the pleadings in addressing defendants' motion. However, the court may take judicial notice of matters of public record, including files from other cases without converting the motion to dismiss to a motion for summary judgment. <u>MGIC Indem. Corp. v. Weisman</u>, 803 F.2d 500, 504 (9th Cir. 1986). In addition, intervenors allegations regarding Article III standing are properly addressed under Rule 12(b)(1), and the court will consider matters outside the pleadings to address those arguments. <u>See</u> <u>Cetacean Community v. Bush</u>, 386 F.3d 1169, 1175 (9th Cir. 2004)(claims regarding lack of Article III standing are properly addressed under Rule 12(b)(1)).

<u>International Association</u>, 804 F.2d 1472, 1478 (9th Cir. 1986), <u>cert. granted</u>, 485 U.S. 958, <u>dismissal denied</u>, 487 U.S. 1215, <u>judgment affirmed</u>, 488 U.S. 347 (1989). It must give fair notice and state the elements of the claim plainly and succinctly. <u>Id</u>.

A complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that plaintiff can plead no set of facts in support of a claim. <u>Mishler v. Clift</u>, 191 F.3d 998, 1002 (9th Cir. 1999)(citation omitted). The court accepts plaintiff's material allegations in the complaint as true and construes them in the light most favorable to plaintiff. <u>Id</u>.

### III. <u>DISCUSSION</u>

<u>First through Fourth claims</u>

Defendants move to dismiss plaintiffs' first four claims for lack of subject matter jurisdiction, arguing that there is no final agency action. Specifically, defendants argue that: 1) plaintiffs' broadly framed challenges to the manner in which the agency is carrying out or managing its grazing programs are not subject to judicial review under the APA, citing <u>Lujan v. National Wildlife Federation</u>, 497 U.S. 871, 890 (1990) and <u>Norton v. Southern Utah Wilderness Alliance (SUWA)</u>, 124 S.Ct. 2373, 2381 (2004); 2) plaintiffs' second and fourth claims, based on an alleged pattern, practice, or policy, are the type of claims rejected in <u>Oregon Natural Desert Association v.</u>

<u>Forest Service</u>, 03-381-HA (D.Or.) (Opinion and Order June 20, 2005) and <u>Institute for Wildlife Protection v. Norton</u>, 337 F.Supp.2d 1223 (W.D. Wash. 2004); and 3) the AOIs do not constitute final agency actions under the APA.

In response, plaintiffs argue that: 1) plaintiffs have amended their complaint to identify not only the AOIs, but also the grazing permits and AMPs on eleven allotments for specific years where there are documented violations of grazing standards as the agency actions giving rise to plaintiffs' claims and the previous decisions by Judge Jones and Judge Haggerty do not address or foreclose judicial review of these actions; 2) both Judge Jones and Judge Haggerty found that the permits are the source of the legal obligations governing grazing; 3) permits constitute final agency actions which may be challenged under the APA under the test set forth in <u>Bennett v. Spear</u>, 520 U.S. 154 (1997); 4) plaintiffs' challenge to the permits is not overly broad or based on a failure to act and, therefore, their challenge is not foreclosed by <u>Lujan</u> or <u>SUWA</u>; 5) the notice pleading requirements do not require plaintiffs' to plead their claims with any more specificity; and 6) plaintiffs' pattern and practice claims challenge alleged permit violations and are not based on the agency's failure to act, and, therefore, their challenge is not foreclosed by Judge Haggerty's opinion or <u>Institute for Wildlife Protection</u>, and instead are supported by <u>High Sierra Hikers Association v. Blackwell</u>, 381 F.3d 886 (9th

Cir. 2004), <u>opinion amended and superseded</u>, 390 F.3d 630 (9th Cir. 2004).

In reply, defendants argue that:

1) plaintiffs' first four claims fail to identify any particular agency action, other than the AOIs the Forest Service issued in each of th years 2000-2005 for the eleven allotments at issue in this case;

2) the manner in which the claims are framed and articulated is extraordinarily broad and diffuse and assert that the overall, ongoing management and oversight of the grazing allotments at issue is flawed - such broadly framed claims cannot be judicially reviewed under <u>Lujan</u> or <u>SUWA</u>;

3) plaintiffs' brief evidences that their claims against the overall grazing program are overly broad;

4) plaintiffs' amended complaint does not identify any specific activities other than the AOIs, and make only general reference to the grazing permits and the AMPs;

5) plaintiffs claims invite the court to act as a Congressional oversight committee overseeing how the Forest Service is administering their grazing program;

6) plaintiffs' second and fourth claims, which are pattern and practice claims, are barred by Judge Haggerty's opinion in <u>ONDA</u> 03-381 and plaintiffs' distinction between the AOIs in Judge Haggerty's opinion in <u>ONDA</u> 03-381 and the permits in this case fails;

7) plaintiffs' distinction between a pattern and practice claim predicated on the Forest Service's alleged failure to act is no different than a claim predicated on affirmative agency activities and <u>High Sierra</u> is not applicable to this case;

8) plaintiffs should not be allowed to challenge agency action at every step of the process, i.e. AMPs, AOIs, issuance of the grazing permit; instead, plaintiffs should only be allowed to challenge the Forest Service's decision making at the completion of the NEPA process and these NEPA decisions should be the only final agency action the plaintiffs should be allowed to challenge;

9) the court should also dismiss plaintiff's claim regarding the only allotment that the NEPA analysis has not been completed because there is no law for the court to apply - defendants concede the permit is the final agency action for this allotment, but argue that the Forest Service is under Congressional mandate to reissue the permit on the same conditions and terms until the NEPA analysis is complete, thereby removing any discretion on the part of the Forest Service regarding the terms and conditions of the grazing permit.

10) even if the court was to determine that all the grazing permits are final agency actions, any review for four of the eleven allotments is barred by the six year statute of limitations;

In support of defendants' position, intervenors argue that:
1) plaintiffs lack statutory standing under the APA because:
a) plaintiffs have failed to identify and allege any final
agency action or any clear statutory duty which the Forest
Service has failed to perform; 2) plaintiffs lack Art III
standing based on the allegations in the complaint; 3)
plaintiffs' programmatic challenge to the Forest Services
grazing program is barred by <u>Lujan</u>, <u>SUWA</u>, <u>Center for
Biological Diversity v. Veneman</u>, 394 F.3d 1108, 1112 (9th Cir.
2005), and <u>Institute for the Protection of Wildlife v. Norton</u>,
337 F.Supp.2d 1223, 1227 (W.D. Wash. 2004); 4) Judge Jones in
<u>ONDA</u> 03-213 did not find that permits were final agency
actions and such a ruling would be contrary to the basic
rational of Judge Jones's decision in <u>ONDA</u> 03-213; 5)
plaintiffs have failed to allege facts supporting Article III
standing - plaintiff's have not alleged a zone of interest
damaged by the agency's alleged violations of the underlying
statutes -the complaint does not state how the alleged
violations impacts their rights or caused them to sustain
injury - plaintiffs' allegations state that their members use,
study, research and enjoy the entirety of both National
Forests and have not alleged any specific violations on the
eleven allotments that causes them harm; 6) plaintiffs must
some use directed to the particular allotments and specific
injury to that use to support their first six claim;

6) plaintiffs' programmatic challenges are barred by <u>Lujan</u> and <u>SUWA</u>; 7) plaintiffs' challenges to the Forest Service's alleged failure to implement the monitoring requirements of INFISH also fails under <u>Ecology Center, Inc. v. U.S. Forest Service</u> 192 F.3d 922, 925-926 (9th Cir. 1999); and 8) the Forest Service is not under a non-discretionary duty to adequately modify or eliminate grazing when those practice retard the attainment of Riparian Management objectives.

In sur-reply to defendants' arguments, plaintiffs argue that:

1) the factual issues presented by defendants are intertwined with the merits of the plaintiffs' claims, and. therefore, the court should apply the summary judgment standard when reviewing these claims;

2) NEPA-based environmental assessments are not the exclusive agency action giving rise to plaintiffs' claims;

3) grazing permits are what authorizes grazing on the National Forests;

4) the Forest Service Handbook is inconsistent and does not support the defendants position that only NEPA-based documents constitute final agency action;

5) the Forest Service's position on whether an action is a final agency action is not determinative;

6) the Forest Service Handbook is of limited legal effect;

7) Ninth Circuit case law demonstrates that grazing permits

are final agency actions, citing <u>Idaho Watershed Projects v. Hahn</u>, 307 F.3d 815 (9th Cir. 2002), <u>NWF v. Cosgriffe</u>, 21 F.Supp.2d 1211 (D.Or. 1998), <u>High Sierra Hikers</u>, and <u>Neighbors of Cuddy Mtn v. Alexander</u>, 303 F.3d 1059, 1067 (9th Cir. 2002);

7) under the test set forth in <u>Bennett</u> grazing permits are final agency action;

8) the Forest Service Handbook and regulations support that a grazing permit is a final agency action;

9) defendants have admitted that for one of the grazing allotments, and this position is consistent with Judge Jones' opinion in <u>ONDA</u> 03-213 and Judge Haggerty's opinion in <u>ONDA</u>, 03-318;

10) the NEPA based documents do not authorize grazing and the Forest Service has separate legal obligations under NFMA; and

11) plaintiffs' first four claims satisfy Rule 8's notice pleading requirements.

In response to the intervenors' brief, plaintiffs argue that:

1) plaintiffs have statutory standing under the APA;

2) plaintiffs are within the zone of interest for the statutes at issue in plaintiffs' first six claims under NEPA, NFMA and FLPMA - plaintiffs have alleged ongoing violations of the INFISH standards in violation of the NFMA, plaintiffs have alleged that the Forest Service has failed to prepare timely

AMPs in violation of FLPMA, Plaintiffs have alleged that the
Forest Service has permitted continued grazing without the
requisite environmental analyses in violation of NEPA -
plaintiffs and their members interests are harmed by
defendants failure to comply with NEPA, NFMA, and FLPMA as
demonstrated by the Declarations of Mr. Marlett and Mr. Woods;
3) plaintiffs have Article III standing through the
allegations in the amended complaint by describing the
interest of the two organizations and their members in the
Fremont Winema Forests.  Plaintiffs allege their interest are
being harmed by the challenged violations and plaintiffs have
submitted the declarations of Mr. Marlett and Mr. Woods to
support their allegations of harm.

**Article III Standing**

The party invoking jurisdiction has the burden of
establishing the elements of Article III standing.  <u>Lujan v.
Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992).  To establish
Article III standing, the

> plaintiff must have suffered an injury in fact - an
> invasion of a legally protected interest, which is
> (a) concrete and particularized, and (b) actual or
> imminent, not conjectural or hypothetical.  Second,
> there must be a causal connection between the injury
> and the conduct complained of - the injury has to be
> fairly traceable to the challenged action of the
> defendant, and not the result of the independent
> action of some third party not before the court.
> Third, it must be likely, as opposed to merely
> speculative, that the injury will be redressed by a
> favorable decision.

<u>Id</u>. at 560-561.

The injury in fact test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured. Sierra Club v. Morton, 405 U.S. 727, 734-735 (1972). The plaintiff's injury "cannot be a general or amorphous harm but must be particular, distinct, and concrete." National Wildlife Federation v. Burford, 871 F.2d 849, 852 (9th Cir. 1989). Plaintiff's proof of injury must be specific. Gladstone Realtors v. Village of Bellwood, 441 U.S. 91 (1979).

"To establish injury in fact for purposes of Article III, a plaintiff must not only show that the agency's disregard of a procedural requirement results in an increased risk of environmental harm, but a plaintiff must also show the increased risk is to the litigant's concrete and particularized interests." Committee to Save the Rio Hondo v. Lucero, 102 F.3d 445, 449 (10th Cir. 1996)(citations omitted). "[E]nvironmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be lessened' by the challenged activity." Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc., 528 U.S. 167, 181 (2000).

Plaintiffs amended complaint describes the interest of the two environmental organizations and their members, including the preservation and protection of native fish and

wildlife species, the use and enjoyment of the areas in
question by members for recreation and scientific study.  The
complaint alleges that these interest are being harmed and
will continue to be harmed by the defendants' continued
authorization of grazing that is environmentally damaging and
not in compliance with the law.

ONDA members use and enjoy all parts of the Fremont
Winema National Forest including the eleven grazing allotments
at issue.  (Marlett Decl. ¶5).  They also use and enjoy the
waters down steam from several of the grazing allotments.
(Id. at ¶6).  The grazing in these allotments is causing
damage to the riparian areas, water quality, fisheries,
wildlife and aesthetics.  (Id. at ¶7).  The defendants failure
to comply with the law is causing harm to Mr. Marlett's
interests and the interests of ONDA members and they will
suffer irreparable harm if it is allowed to continue.  (Id. at
¶8).  The areas in question are suffering degradation,
destruction of riparian vegetation, soil erosion,
sedimentation in steams, elevated water temperatures in the
streams, fecal contamination of the water sources, degradation
of fish habitat, degradation of aspen groves, declining plant
species populations, increasing invasion of weeds, and
accelerated fire regimes.  (Id.).  The consequences interfere
with members recreational, scientific, aesthetic, and
spiritual use and enjoyment of the grazing allotments at

issue.  (Id. at ¶9).

Mr. Woods, a member of ONRC, uses and enjoys the all areas of the Fremont Winema National Forests and his experiences have been spoiled or diminished by the impacts of livestock grazing on meadows, riparian areas and water quality.  (Wood Decl. ¶¶2-5)  He uses and enjoys area downstream from many of the grazing allotments at issue and the allotment plans are inadequate to protect riparian areas, water quality, fisheries, wildlife, botanical resource and aesthetics, and his use and enjoyment of the area.  (Id. ¶7). The defendants failure to comply with the law is causing continued harm to his interests by allowing continued degradation of the environment and its resources.  (Id. ¶8). He is suffering irreparable harm from interference with his recreational, scientific, aesthetic and spiritual use and enjoyment of the areas at issue.  (Id. at ¶9).

Plaintiffs amended complaint, as well as the declarations of Mr. Marlett and Mr. Woods, shows that they meet the requirements of Article III standing.  They also demonstrate their interest are within the zone of interest these statutes were meant to protect.

**Statutory Standing**

In order to seek review under the APA, plaintiffs must challenge a final agency action.  5 U.S.C. § 704.  The APA's standing requirements are that there be a final agency action

and that plaintiffs' injury falls within the zone of interest of the violation statutory provisions.  The court has previously found that plaintiffs allegations satisfy the zone of interest test.

An agency action is considered final when: 1) the action marks the consummation of the agency's decision making process and 2) the action is one by which rights or obligations are determined or from which legal consequences flow.  Montana Wilderness Ass'n, Inc. v. U. S. Forest Service, 314 F.3d 1146, 1150 (9th Cir. 2003).  Plaintiffs may not bring a broad, generic challenge to an agency program, but, instead, must bring a challenge to a site-specific action by the agency. See Lujan v. National Wildlife Federation, 497 U.S. 871, 891-893 (1990).

It is clear that both Judge Jones and Judge Haggerty found that AOIs do not constitute final agency action, and this court agrees with the reasoning set forth in those opinions.  ONDA v. U.S. Forest Service, 03-213-J) (D.Or. June 3, 2005) and ONDA v. U.S. Forest Service, 03-381-HA (D.Or. June 20, 2005).  This court also finds that the same reasoning would apply to AMPs.  Therefore, defendants motion to dismiss plaintiffs' claims with regard to AOIs and AMPs should be granted.

The court does find that Ninth Circuit case law is clear that grazing permits do constitute final agency actions.

<u>Idaho Watersheds Project v. Hahn</u>, 307 F.3d 815, 824 (9th Cir. 2002).  It is clear that a grazing permit satisfies the requirements set forth in <u>Bennett</u>.  The court also finds no support for the defendants position that any review of the grazing permits must be limited to a challenge at the end of the NEPA process.  NEPA is a purely procedural statute with no substantive guidelines or protections.  The NFMA contains substantive guidelines with which the Forest Service must comply and plaintiffs' should be allowed to challenge any alleged non-compliance under the APA for violations of the NFMA which provides a separate cause of action from any NEPA claims that may also exist.  Defendants motion to dismiss plaintiff's claims because the permits do not constitute final agency action should be denied.

Defendants argue that plaintiffs' claims on four of the eleven allotments are barred by the statute of limitations.  However, based on the allegations in plaintiffs' complaint, violations of the terms of the grazing permits have taken place within the statute of limitations.

The court finds that plaintiffs' first, second, third and fourth claims, which are based on an alleged pattern or practice of the Forest Service of violating the law, are barred by <u>Lujan</u> and <u>SUWA</u> as set forth in Judge Haggerty's opinion in <u>ONDA</u> 03-381 at 15-16 and the reasoning set forth in <u>Institute for Wildlife Protection v. Norton</u>, 337 F.Supp.2d

1223, 1228-1229 (W.D. Wa 2004). This court agrees with Judge Haggerty's reasoning in ONDA, 03-318 and finds these claims should be dismissed. This court also finds our case analogous to Institute for the Protection of Wildlife,337 F.Supp.2d 1223, 1227 (W.D. Wash. 2004). In that case, the plaintiffs attempted to distinguish their case from a broader programmatic challenge by citing to specific instances of the defendants failing to act. The court found that plaintiffs were in fact trying to raise a practice and pattern claim that was barred by Lujan. The same reasoning applies in this case. Although plaintiffs are challenging violations of eleven specific allotments their complaint is a broad programmatic attack of the Forest Service's allege failure to implement the INFISH standards and monitoring requirements in the Fremont Winema National Forests and such claims are barred by Lujan.

Fifth and Sixth Claims

Defendants argue that the court lacks authority under Section 706(1) of the APA to compel the Forest Service to conduct NEPA analyses or AMPs, citing Oregon Natural Desert Association v. Forest Service, 03-213-JO (Opinion & Order June 3, 2005), Oregon Natural Desert Association v. Forest Service, 03-381-HA (Opinion & Order June 20, 2005), Section 325 of the 2004 Interior Department Appropriations Act, 36 C.F.R. § 222.2(b), and SUWA.

In response, plaintiffs argue that:
1) defendants reliance on the reasoning set forth in Judge Jones's and Judge Haggerty's opinions is misplaced, because a) plaintiffs do not seek to have the court invalidate grazing permits or require defendants to modify the terms and conditions of the permits; b) plaintiffs do not request that the court determine when defendants will complete the required environmental analyses; c) plaintiffs request that the court declare that the defendants' continued authorization of grazing without updated AMPs or NEPA analyses constitutes agency action unlawfully withheld or unreasonably delayed, or is arbitrary and capricious; 2) plaintiffs request injunctive relief on the eleven allotments where grazing violations have occurred until revised AMPs and NEPA analyses have been prepared; 3) Judge King's ruling on plaintiffs' request for a preliminary injunction in <u>Oregon Natural desert Association v. U.S. Forest Service</u>, 03-213-KI (D.Or. June 10, 2004) and Judge Haggerty's opinion in <u>Oregon Natural Desert Association v. U.S. Forest Service</u>, 03-381-HA (D.Or. July 15, 2004) supports plaintiffs' position; 4) Judge Jones's opinion, <u>ONDA</u>, 03-213-JO is distinguishable; 5) <u>SUWA</u> does not apply to claims brought pursuant to §706(2)(A) and defendants' arguments were dismissed by both Judge Jones and Judge Haggerty; and 6) the 1995 Rescissions Act requires the revision of AMPs.

In reply, defendants argue that: 1) Judge King's preliminary inunction ruling in <u>ONDA</u>, 03-213-KI was displaced by the final rulings in that case; and 2) the court should follow earlier rulings on this issue.

This court agrees with the opinions of both Judge Jones in <u>ONDA</u>, 03-213 and Judge Haggerty in <u>ONDA</u>, 03-318 and the reasoning contained therein and finds that plaintiff's fifth and sixth claims must fail. <u>ONDA</u>, 03-213-JO at 25-26 (D.Or. June 3, 2005) and <u>ONDA</u>, 03-381-HA at 16 (D.Or. June 20, 2005).

<u>Eighth Claim</u>

Defendants argue that plaintiffs' eighth claim challenging the validity of the FWS's 1997 and 1998 Biological Opinions (BOs) are barred by the statute of limitations, citing <u>Waldo Mining Dist. v. United States Forest Serv.</u>, CV-03-1175-CO (Findings and Recommendation March 11, 2004 and Order May 25, 2004) and <u>Alsea Valley Alliance v. Department of Commerce</u>, 161 F.Supp.2d 1154, 1160 (D.Or. 2004).

In response, plaintiffs argue that:
1) plaintiffs eighth claim argues that the USFW has acted in an arbitrary and capricious by failing to include INFISH standards as reasonable and prudent measures in the BOs governing the Fremont-Winema grazing program as required by Section 7 of the ESA, that these BOs were re-authorized in 2000 and will remain valid until 2007, and that this re-authorization took place within the statute of limitations.

In reply, defendants argue that: 1) plaintiffs are attempting to substitute a different claim for the one plead in their complaint - plaintiffs' claim challenges the 1997 and 1998 BOs and is barred by the statute of limitations.

Plaintiffs' eighth claim alleges that the Fish and Wildlife Service's failure to include INFISH standards as reasonable and prudent measures in 1997 and 1998 BOs governing the Fremont-Winema grazing program to avoid jeopardy to listed fish species is arbitrary and capricious and a violation of the ESA. (Id. at ¶¶120-121). The complaint does not allege any updates of these BOs.

The court finds that this claim as pleaded is barred by the six year statute of limitations. <u>Alsea Valley Alliance v. Evans</u>, 161 F.Supp.2d 1154, 1160-1161 (D.Or. 2001).

### III. <u>ORDER</u>

Based on the foregoing, it is ordered that defendants' motion to dismiss (#39) be granted.

DATED this <u>  13  </u> day of January, 2006.


_____/s/_____

UNITED STATES MAGISTRATE JUDGE