IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

OREGON NATURAL DESERT ASS'N,       )
and OREGON NATURAL RESOURCES        )
COUNCIL FUND,                       )
                                    )    Civ. No. 04-3096-PA
          Plaintiffs,               )
                                    )    **ORDER**
     v.                             )
                                    )
UNITED STATES FOREST SERVICE,       )
UNITED STATES FISH AND              )
WILDLIFE SERVICE, and KAREN         )
SHIMAMOTO,                          )
                                    )
          Defendants.               )
_____

**PANNER, Judge:**

Plaintiffs Oregon Natural Desert Association and Oregon

Natural Resources Council Fund bring this action for declaratory

and injunctive relief against defendants United States Forest

Service, United States Fish and Wildlife Service, and Karen

Shimamoto, supervisor of the Fremont-Winema National Forests.

Plaintiffs claim that defendants' authorization of livestock

grazing in the Fremont-Winema National Forests violates several

federal statutes and regulations.  Only plaintiffs' Seventh and

1 - ORDER

Eighth claims, which assert violations of the Endangered Species Act (ESA), 16 U.S.C. §§ 1531-1544, remain at issue.  Plaintiffs assert ESA violations based on (1) the Forest Service's alleged failure to reinitiate formal consultations with the Fish and Wildlife Service regarding the protection of four listed fish species from the effects of grazing; and (2) the failure of two Fish and Wildlife Service biological opinions (BiOps) to incorporate the standards of the Inland Native Fish Strategy (INFISH).

The parties have filed cross-motions for summary judgment. I grant defendants' motion for partial summary judgment and deny plaintiffs' motion for partial summary judgment.

**BACKGROUND**

**I.  Factual Summary**

The Fremont National Forest contains about 76 grazing allotments, including a total of about 214 pastures.  The Winema Forest contains about 22 grazing allotments.

Streams within the Fremont-Winema Forests are habitat for four listed species of fish, the bull trout, and three species of sucker fish:  the Warner, shortnose, and Lost River suckers.[1] Livestock grazing may harm fish habitat by removing riparian plants, altering stream channels, lowering water tables,

_____

[1]  The shortnose and Lost River suckers are federally endangered, and the bull trout and Warner sucker are federally threatened.  See 2d Shimamoto Decl., Attach. A, at 1.

2 - ORDER

increasing soil erosion, and reducing water quality.

In 1997 and 1998, the Fish and Wildlife Service issued BiOps for the bull trout and the three sucker species.  The BiOps set requirements that were intended to limit the harm caused by grazing, including standards for maximum pasture use, stubble height, and duration of grazing per season.  The two BiOps expired on December 31, 2006.

In December 2005, defendant Shimamoto, supervisor for the Fremont-Winema Forests, sent a letter to the Fish and Wildlife Service about the Forest Service's need to consult on livestock grazing before the BiOps expired.  In her first declaration, which defendants filed in November 2006, Shimamoto stated that the Forest Service's formal consultation with the Fish and Wildlife Service "encompasses livestock grazing and associated activities that may adversely affect the listed suckers and bull trout."  Shimamoto Dec. ¶ 6.  Informal consultation will concern grazing and other activities that are not likely to harm the listed fish species.  Shimamoto stated that the Forest Service's consultations with the Fish and Wildlife Service were to be completed by March 20, 2007, and that grazing on Fremont-Winema National Forests would not start until May 1, 2007.

Shimamoto has submitted a second declaration, dated March 19, 2007.  In her second declaration, Shimamoto states that consultation with the Fish and Wildlife Service should be

completed by May 20, 2007, and that livestock grazing will not begin until June 1, 2007, at the earliest.  Shimamoto states that at a February 22, 2007 telephone conference call with the Fish and Wildlife Service, the Forest Service agreed to provide the Lost River Grazing Management Biological Assessment by March 8, 2007, and the Sprague Grazing Management Biological Assessment and Warner Lakes Grazing Management Biological Assessment by April 8, 2007.  Shimamoto states that final edits on the Lost River Grazing Management Biological Assessment should be competed by March 20, 2007, and that the remaining two biological assessments will certainly be completed before April 8, 2007. Shimamoto concludes that "no livestock grazing actions that may affect the listed suckers or bull trout will occur in 2007 until consultation is complete."  2d Shimamoto Decl. ¶ 7.

## II.  Legal Framework

The Endangered Species Act prohibits federal agencies "from taking discretionary actions that would 'jeopardize the continuing existence of any endangered species or threatened species or result in the destruction or adverse modification of habitat of such species . . . .'"  Forest Guardians v. Johanns, 450 F.3d 455, 457 (9th Cir. 2006) (quoting 16 U.S.C. § 1536(a)(2).  The ESA mandates procedures for federal agencies that are considering a discretionary action which could jeopardize a listed species.

4 - ORDER

The Ninth Circuit recently described the process required by the ESA and implementing regulations:

First, the agency contemplating the action must request information from the appropriate federal wildlife service regarding "whether any species which is listed or proposed to be listed may be present in the area of such proposed action."  16 U.S.C. § 1536(c)(1).  In this case, the appropriate wildlife service is the United States Fish and Wildlife Service (FWS).  If the wildlife service determines that listed species may be present in the affected area, the agency preparing to act must produce a "biological assessment" in accordance with the National Environmental Policy Act "for the purpose of identifying any endangered species or threatened species which is likely to be affected by such action."  Id.  If the biological assessment concludes that listed species are in fact likely to be adversely affected, the agency ordinarily must enter "formal consultation" with the wildlife service.  Id. § 1536(a)(2); [Thomas v. Peterson, 753 F.2d 754, 763 (9th Cir. 1985)].  Formal consultation requires the wildlife service to produce a "biological opinion" that evaluates the nature and extent of the proposed action's effect on the listed species and that, if necessary, posits reasonable and prudent alternatives to the proposed action.  16 U.S.C. § 1536(b)(3)(A); Pac. Rivers Council v. Thomas, 30 F.3d 1050, 1054 n.8 (9th Cir. 1994).

Following the issuance of a biological assessment which determines that listed species are likely to be adversely affected, the agency may, however, attempt to avoid the lengthy and costly process of formal consultation with the service by voluntarily initiating a less rigorous regulatory procedure called "informal consultation."  50 C.F.R. § 402.13.

Informal consultation is an optional process that includes all discussions, correspondence, etc., between the [Fish and Wildlife] Service and the Federal agency designed to assist the Federal agency in determining whether formal consultation or a conference is required.  If during informal consultation it is determined by the Federal agency, with the written concurrence of the [Fish and Wildlife] Service, that the action is not likely to adversely affect listed

species or critical habitat, the consultation process
is terminated, and no further action is necessary.

Id. § 402.13(a).  In other words, regardless of whether
a biological assessment concludes that a proposed
action would likely adversely affect listed species, if
informal consultation is initiated and results in a
finding that the proposed action would not in fact have
such an effect, the agency is not required to engage in
formal consultation.  Id. § 402.14.

There may be an additional step in the process,
however, in some cases.  Informal consultation must be
re-initiated when (1) "new information reveals effects
of the action that may affect listed species or
critical habitat in a manner or to an extent not
previously considered," id. § 402.16(b), or (2) "the
identified action is subsequently modified in a manner
that causes an effect to the listed species or critical
habitat that was not considered in the biological
opinion," id. § 402.16(c).

Id., 450 F.3d at 457-58 (footnotes omitted).

Shimamoto states that the Forest Service has created a

streamlined consultation process for working with the Fish and

Wildlife Service on ESA requirements.  Shimamoto states that

under the streamlined consultation process, informal

consultations are concluded within 30 days and formal

consultations are concluded within 60 days.

Plaintiffs' Seventh Claim asserts that defendants have

violated the ESA by failing to complete reinitiated consultation

to ensure that grazing on the Fremont-Winema Forests does not

jeopardize the listed fish species.

Plaintiffs' Eighth Claim asserts that the Fish and Wildlife

Service has acted arbitrarily and capriciously by not including

6 - ORDER

the standards of the Inland Native Fish Strategy (INFISH) in the
two BiOps issued on the four listed fish species.

## STANDARDS

Judicial review of an agency's action is governed by the
Administrative Procedures Act.  The court may set aside an
agency's action if the action is "arbitrary, capricious, an abuse
of discretion, or otherwise not in accordance with law . . . ."
5 U.S.C. § 706(a)(2).  Before a court overturns an agency
decision under this standard,

> the court must consider whether the decision
> was based on a consideration of the relevant
> factors and whether there has been a clear
> error of judgment.  Although this inquiry
> into the facts is to be searching and
> careful, the ultimate standard of review is a
> narrow one.  The court is not empowered to
> substitute its judgment for that of the
> agency.

Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 416
(1971) (citations omitted).  This standard applies to an agency's
interpretation of its own regulations, particularly when
scientific methods are at issue.  Neighbors of Cuddy Mountain v.
U.S. Forest Service, 137 F.3d 1372, 1376 (9th Cir. 1998)
(citations omitted).  "An agency action is also arbitrary and
capricious if the agency fails to 'articulate a satisfactory
explanation for its action including a "rational connection
between the facts found and the choice made."'"  Friends of Wild
Swan, Inc. v. U.S. Fish & Wildlife Serv., 12 F. Supp. 2d 1121,

7 - ORDER

1131 (D. Or. 1997) (quoting Motor Vehicles Mfrs. Ass'n. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983) (further citations omitted)).

Although the parties have moved for summary judgment, the standards for summary judgment do not apply to the judicial review of a federal agency's final decision. Judicial review under the APA is generally limited to the administrative record, so "there are no material facts in dispute." Maine v. Norton, 257 F. Supp. 2d 357, 363 (D. Me. 2003). The label placed on the parties' motions does not change this court's standards for reviewing an agency decision. Cf. id. ("[s]ummary judgment is an appropriate procedure" for judicial review of agency actions).

DISCUSSION

## I. Subject Matter Jurisdiction

### A. Mootness

Defendants contend that plaintiffs' claims are moot because defendants are now conducting consultations that should result in a new BiOp by the end of May 2007, before the next grazing season starts in June 2007. The two disputed BiOps have expired and will not control future grazing.

Plaintiffs respond that the disputed BiOps remain in effect until consultations are completed, and that an injunction would insure that a new BiOp will comply with the ESA. Plaintiffs also contend that a declaratory judgment would clarify defendants'

8 - ORDER

legal obligations.

### 1. Standards

"Federal courts lack jurisdiction to consider 'moot questions . . . or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'" Johanns, 450 F.3d at 461 (quoting Church of Scientology of Cal. v. United States, 506 U.S. 9, 12 (1992)).  The party asserting mootness bears a heavy burden to show "that there is no effective relief that the court can provide."  Id.

### 2. Discussion

#### a. Seventh Claim

Defendants argue that plaintiffs' Seventh Claim, regarding defendants' alleged failure to reinitiate consultation, is moot. I agree.  Defendants have initiated formal consultation. Shimamoto's declarations indicate that no grazing will occur until the consultation is complete.

Plaintiffs argue that because the grazing permits have time remaining on their ten-year terms, this claim is not moot. Plaintiffs contend that declaratory relief would resolve the disputes regarding the current grazing permits.

Defendants respond that while the grazing permits are ongoing, the grazing permits are subject to the Annual Operating Instructions (AOIs), which implement the Allotment Management Plans (AMPs).  Because AOIs must follow the current BiOp, the

9 -- ORDER

current grazing permits will be altered, if necessary, by the new
BiOp.  Because defendants should issue a new BiOp before the 2007
grazing season begins, I conclude that any ruling on plaintiffs'
Seventh Claim would be advisory.

### b.  Eighth Claim

Defendants contend that because the two challenged BiOps
will be superseded by a new BiOp before the 2007 grazing season
begins, plaintiffs' Eighth Claim is also moot.  Defendants argue
that claims may be mooted in three ways:  (1) the agency
voluntarily ceases the challenged action; (2) the challenged
action is completed or implemented; or (3) the challenged action
expires, becomes obsolete, or is superseded by another agency
action.  Defendants state that they are relying on the third
category, while plaintiffs focus incorrectly on the second
category.

Defendants rely on Forest Guardians v. U.S. Forest Service,
329 F.3d 1089, 1094-96 (9th Cir. 2004).  There, the plaintiffs
claimed that the Forest Service had violated the ESA by failing
to reinitiate consultation with the Fish and Wildlife Service
regarding two listed species.  The Ninth Circuit concluded that
the challenged BiOp there had been superseded by Forest Service
Biological Assessment and Evaluations, for which the Forest
Service had satisfied the ESA's consultation requirement.  The
Ninth Circuit stated that "when one BO supersedes another, a

challenge to the superseded BO is moot."  <u>Id.</u> at 1096 (citing

<u>American Rivers v. National Marine Fisheries Serv.</u>, 126 F.3d

1118, 1123-24 (9th Cir. 1997)).

    Plaintiffs attempt to distinguish <u>Forest Guardians</u>, arguing

that here the Fish and Wildlife Service has not yet issued a new

BiOp, while in <u>Forest Guardians</u>, the Fish and Wildlife Service

had issued the new BiOp before the mootness determination.

However, Shimamoto states that consultation will be completed

before the start of the 2007 grazing season, and the challenged

BiOps here have already expired.

    Plaintiffs also rely on the <u>Johanns</u> decision.  In <u>Johanns</u>,

the defendants argued that a claim was moot because while the

appeal was pending, the Forest Service completed the reinitiated

consultation, which was the action the plaintiffs sought to

compel.  The <u>Johanns</u> court concluded that the claim was not moot

because a "continuing practice" was at issue, in that the grazing

permit had a ten-year term.  In addition, because the Forest

Service had argued that it was not required to comply with

monitoring responsibilities, the court held that declaratory

relief would be effective:  "a declaratory judgment that the

Forest Service's actions . . .  violated the ESA would provide

effective relief by governing the Forest Service's actions for

the remainder of the allotment's permit term and by prohibiting

it from continuing to violate the law."  450 F.3d at 462-63.

Johanns is distinguishable because the challenged BiOps here have expired and will not affect future grazing.  Plaintiffs may seek judicial review of the new BiOp.

Plaintiffs also argue that declaratory relief would be helpful to "ensure that the [new] BiOp complies with the law and does so in a timely manner" and that declaratory relief would "clarify and settle" defendants' legal obligations.  I agree with defendants, however, such justifications are so vague as to make Article III's "case or controversy" requirement meaningless.  Courts should not micromanage an agency's procedures under the guise of judicial review.

**B.  Other Issues**

Intervenor defendants argue that even if plaintiffs' claims are not moot under the Article III analysis, the claims should be dismissed under the prudential mootness doctrine.  The Ninth Circuit apparently has not adopted the prudential mootness doctrine, although several other circuits have done so.  See Ali v. Cangemi, 419 F.3d 722 (8th Cir. 2005) (describing prudential mootness as another "variety" of mootness, and noting that the D.C., 4th, and 10th circuits also adopted the doctrine); Greenbaum v. U.S. EPA, 370 F.3d 527, 534-35 (6th Cir. 2004) (applying prudential mootness doctrine); cf. Gator.com Corp. v. L.L. Bean, Inc., 398 F.3d 1125, 1141 (9th Cir. 2005) (en banc) (W. Fletcher, J., dissenting) ("the Supreme Court is moving

toward the prudential mootness doctrine advocated by Chief
Justice Rehnquist") (citation omitted); <u>Oregon Natural Resources
Council v. Keys</u>, Civ. No. 02-3080-CO, 2004 WL 1048168, at *10 (D.
Or. 2004) (applying doctrine).  Because of my ruling on Article
III mootness, I need not address whether prudential mootness
applies here.

The amicus briefs contend that plaintiffs' claims are not
justiciable because the claims are a broad programmatic attack.
Because I conclude that plaintiffs' claims are moot, I will not
address this argument.

## II.  Statute of Limitations (Eighth Claim)

This court previously granted defendants' motion to dismiss
the Eighth Claim as barred by the statute of limitations, but
allowed plaintiffs to file an amended Eighth Claim.  I agree with
defendants that the amended Eighth Claim is also barred by the
statute of limitations.

The Eighth Claim as amended alleges that the Fish and
Wildlife Service acted arbitrarily and capriciously in failing to
include INFISH standards in two challenged BiOps.  To avoid the
statute of limitations problem, the amended claim alleges that
the Fish and Wildlife Service "reauthorized" the BiOps in 2000
"after completing reinitiated consultation with the Forest
Service."

13- ORDER

### A. Standards

Because the ESA has no statute of limitations, courts apply the six-year general statute of limitations for civil actions against the federal government.  See <u>Alsea Valley Alliance v. Evans</u>, 161 F. Supp. 2d 1154, 1160 (D. Or. 2001) (citing 28 U.S.C. § 2401(a) ("every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues"), <u>appeal dism'd</u>, 358 F.3d 1181 (9th Cir. 2004).  Under § 2401(a), a claim accrues when the person challenging the action can institute and maintain an action.  <u>Id.</u> (citing <u>Trafalgar Capital Assocs., Inc. v. Cuomo</u>, 159 F.3d 21, 34 (1st Cir. 1998)).

### B. Discussion

Here, plaintiffs argue that the Fish and Wildlife Service "reauthorized" the disputed BiOps in 2000.  Plaintiffs rely on a May 2000 letter from the Fish and Wildlife Service to the supervisor of the Fremont National Forest[2] about reinitiating consultation because of grazing violations during the 1998 and 1999 seasons.  Plaintiffs argue that this letter shows that the Fish and Wildlife Service reauthorized the BiOps without analyzing INFISH.

The May 2000 letter states that "the original Opinions would

---

[2]  At that time the Fremont and Winema National Forests were administered separately.

14- ORDER

remain intact," ESA 1848-49; and that the "biological opinions are still valid and stand as written," ESA 1856.  In addition, the letter states that the BiOps "considered activities occurring until the year 2007, and so this reinitiation covers the same term."  ESA 1857.  I conclude that the letter is not a reauthorization of the BiOps.  Instead, the letter reaffirms the BiOps' continuing effectiveness until 2007.  Plaintiffs filed this action in November 2004, more than six years after the second BiOp was filed in October 1998.  The six-year statute of limitations bars plaintiffs' Eighth Claim.

**CONCLUSION**

Plaintiffs' motion for summary judgment (#94) is denied. Defendants' motion for summary judgment (#118) is granted.  Any other pending motions are denied as moot.


DATED this ⅔ day of April, 2007.


OWEN M. PANNER
U.S. DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| OREGON NATURAL DESERT ASS'N, and OREGON NATURAL RESOURCES COUNCIL FUND, | ) ) ) ) | |
| Plaintiffs, | ) ) | Civ. No. 04-3096-PA |
| v. | ) ) ) | **JUDGMENT** |
| UNITED STATES FOREST SERVICE, UNITED STATES FISH AND WILDLIFE SERVICE, and KAREN SHIMAMOTO, | ) ) ) ) ) | |
| Defendants. | ) ) | |

Based on the record, this action is dismissed.

DATED this _3_ day of April, 2007.

OWEN M. PANNER
U.S. DISTRICT JUDGE

1 - JUDGMENT